1
2
3
4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8
9
10
11
12
13
14

LINCOLN NATIONAL LIFE INSURANCE
COMPANY,

            Interpleader-Plaintiff,

v.

CLAUDIA RIDGWAY, *et al.*,

            Defendants.

Case No. C17-1490 RSM

ORDER ON PENDING MOTIONS

## I.  INTRODUCTION

This matter involves a dispute over the payment of life insurance proceeds.  It comes before the Court on: 1) Defendant Claudia Ridgway's Motion for Summary Judgment Dismissal Against Defendants Joseph M. Gonzales, Amanda Gonzales, Bethany Kristiansen and Estate of Joseph Gonzales and Requiring Payment of Life Insurance Proceeds (Dkt. #14); 2) Defendant Claudia Ridgway's Motion to Extend Time For Filing Answer and for Default Against Joseph M. Gonzales (Dkt. #20); and 3) Plaintiff's Motion for Judgment In Interpleader (Dkt. #22).  The Court has reviewed each motion, along with the attendant briefing in support thereof and in opposition thereto, and addresses each motion in turn below.

## II.  BACKGROUND

This interpleader action was filed by Plaintiff on October 3, 2017.  Dkt. #1. Plaintiff asserts federal question jurisdiction as the insurance policies at issue are governed

ORDER– 1

by ERISA. Dkt. #1 at ¶ ¶ 2.1, fn. 3 and 4.4. The following background facts are not in dispute unless otherwise noted by the Court.

Interpleader-Plaintiff Lincoln National Life Insurance Company ("Lincoln National") is an insurance company that provides employee welfare benefit plans, including group life insurance policies, and administers claims brought under these plans. Dkts. #1 at ¶ 1.1, #14 at 3, ¶ ¶ 8-10, and #22 at 2. Lincoln National issued Group Policy No. 000010213421(the "Basic" Policy) and Group Policy No. GL 000400001000-20816 (the "Voluntary" Policy) (together, the "Policies") to Healthcare Partners, LLC, which employed the decedent, Joseph B. Gonzales. Dkt. #1 at ¶ 1.1 and Exs. A and B thereto.

Mr. Gonzales[1] resided in Skagit County, Washington. Dkts. #1 at ¶ 3.1 and #14 at 2, ¶ 2. He began working as a materials management supervisor for Healthcare Partners, LLC (specifically the Everett Clinic, which was subsequently acquired by Davita), on February 20, 2017. Dkts. #1 at ¶ 1.1 and #14 at 2 ¶ ¶ 4-5. As noted above, Lincoln National issued the insurance policies at issue to Healthcare Partners. Dkt. #1 at ¶ 1.1 and Exs. A and B thereto. The policies provided group life insurance benefits for Healthcare Partners employees, such as Mr. Gonzales. *Id.* at ¶ 3.2 and Dkt. #14 at 3 ¶ ¶ 7-10. The policies became effective for Mr. Gonzales on April 1, 2017. Dkt. #1 at ¶ 3.3.

On or about Monday, March 13, 2017, Mr. Gonzales designated Ms. Ridgway as "the sole" beneficiary of all of the life insurance policies. Dkts. #14-1 at ¶ 6 and Ex. A

---

[1] For ease of reference, the Court will use "Mr. Gonzales" to refer to the decedent in this action. When referring to Mr. Gonzales's son, Joseph M. Gonzales, who is a Co-Defendant in this case, the Court will reference his son's middle initial.

thereto, #1 at ¶3.3 and #22 at 2, fn. 4.  Mr. Gonzales informed Ms. Ridgway of this decision

in an email at 9:37 a.m. on that date.[2]  Dkt. #14-1 at ¶ 6, Ex. A.[3]

      Mr. Gonzales passed away on July 16, 2017, due to recurrent ventricular fibrillation

and ischemic cardio myopathy.  Dkt. #1 at ¶ 3.4 and #14 at 1, ¶ 1.  Plaintiff then became

obligated to pay $61,000 in benefits under the Basic Policy, and $181,000 in benefits under

the Voluntary Policy.  Dkt. #1 at ¶ 3.5.

      On August 1, 2017, the Skagit County Superior Court appointed Mr. Gonzales's

daughters, Amanda Gonzales and Bethany Kristiansen, as co-personal representatives of his

Estate.  *Id.* at ¶ 3.6.

      On August 16, 2017, Ms. Ridgway submitted a claim to Lincoln National for the

life insurance benefits.  *Id.*at ¶ 3.7 and Dkt. #14 at 8, ¶ 23 and Ex. D thereto.  On August

24, 2017, Claim Examiner Nadine Beck contacted Mr. Gonzales's employer's Benefits

Specialist, Nykeia Tolliver.[4]  Dkt. #37 at ¶ 7.  During that phone call, Ms. Tolliver

---

[2]  Mr. Gonzales and Ms. Ridgway had become engaged to be married on February 10, 2017.
Dkts. #14 at 5, ¶ 15 and #14-1 at ¶ 10.  In addition to the life insurance designation, Mr.
Gonzales had named Ms. Ridgway as the primary beneficiary of his employer-provided
401(k).  Dkt. #14-1 at ¶ 13 and Ex. B thereto.  The 401(k) proceeds are not at issue in this
lawsuit.

[3]  Co-Defendants object to the Court's consideration of this exhibit apparently on the basis
that it contains inadmissible hearsay.  Dkt. #26 at 5.  Plaintiff has already acknowledged that
Ms. Ridgway was the designated beneficiary of the policies, and Ms. Ridgway has properly
authenticated the email through her Declaration to the extent that she received it and then
responded.  Accordingly, the Court will not strike or otherwise disregard this exhibit.

[4]  The reason that Ms. Beck contacted Ms. Tolliver is in dispute.  Ms. Beck states that she
made the phone call to confirm the beneficiary designation and to inquire as to any
beneficiary disputes.  Dkt. #37 at ¶ 7.  However, an email from Senior Claims Examiner
Kaline Carter suggests that Ms. Beck had spoken to someone prior to that date to obtain
beneficiary information, during which time no dispute had been mentioned.  *See* Dkt. #23-1,

informed Ms. Beck that Mr. Gonzales's daughters, Amanda Gonzales and Bethany Kristiansen, disputed Ms. Ridgway's designation as the beneficiary under the policies, and said she had received a letter from Ms. Gonzales on August 1, 2017, to that effect. Dkt. #37 at ¶ 7. Ms. Beck asked for a copy of that letter, which she received that afternoon. *Id.* at ¶ 8 and Ex. A thereto.

As a result, Ms. Beck contacted a Senior Claims Examiner, Kaline Carter, seeking guidance about how to proceed. *Id.* at ¶ 9. Ms. Carter questioned why Ms. Beck had failed to pay the claim to Ms. Ridgway as planned, particularly because there had been no dispute on record at the time the claim was made. Dkt. #23-1, Ex. G. Ms. Carter then noted that when Ms. Beck had initially contacted the employer about beneficiary information, no dispute had been mentioned. *Id.* Ms. Carter then directed that, as a result of Ms. Beck's actions, Ms. Beck would need to contact Ms. Ridgway's attorney and Ms. Gonzales and Ms. Kristiansen to determine if there was an actual dispute, the basis of the dispute and whether the dispute could be resolved informally, otherwise, legal action would be necessary. *Id.*

Ms. Beck sent a letter to Ms. Gonzales on August 28, 2017, in which she requested a formal explanation of any contest to Ms. Ridgway's claim, as well as the name of Ms. Gonzales's attorney. Dkt. #37 at ¶ 10. She also contacted Ms. Ridgway's counsel and informed him that Ms. Gonzales and Ms. Kristiansen disputed Ms. Ridgway's claim. *Id.* at ¶ 11. On September 7, 2017, a lawyer representing Ms. Gonzales and Ms. Kristiansen responded, stating that they contested "payment of the death benefit to anyone other than

Ex. G. Ms. Beck also states in that same email that she called the employer to see if anyone had disputed the beneficiary claim. *Id.*

ORDER– 4

[Mr. Gonzales's] children or estate as they have reason to believe the beneficiary was recently changed as a result of undue influence." Dkt. #23, Ex. K. On September 18, 2017, Ms. Ridgway's counsel sent a letter to Ms. Beck disputing the merits of the daughters' claim of undue influence. Dkt. #23-1, Ex. L.

On October 3, 2017, Plaintiff filed the instant Complaint for Interpleader. Ms. Ridgway followed by filing a Motion for Summary Judgment on December 5, 2017, prior to any Answers to the Complaint being filed by any party, and prior to Plaintiff seeking an Interpleader Judgment. Dkt. #14. On December 13, 2017, co-Defendants Amanda Gonzales, Bethany Kristiansen and the Estate of Joseph Gonzales filed an Answer to the Complaint and Cross-Claims for Undue Influence and Unjust Enrichment against Ms. Ridgway. Dkt. #18. Two days later, Ms. Ridgway filed a motion for extension of time to file her Answer to the Complaint and to the Cross-Claims, along with a motion for default against Co-Defendant Joseph M. Gonzales. Dkt. #20. This was followed by a Motion for Judgment in Interpleader filed by Plaintiff. Dkt. #22.

On January 5, 2018, while these motions were pending, Ms. Ridgway filed her Answer to the Complaint and to Co-Defendants' Cross-Claims, and asserted a Counterclaim against Plaintiff for violations of 29 U.S.C. § 1132. Dkt. #33. Plaintiff filed its Answer to the Counterclaim on January 12, 2018. Dkt. #35. The pending motions are now ripe for review.

///

///

///

///

ORDER– 5

# III. DISCUSSION

## A. Procedural Posture of this Matter

As an initial matter, the Court addresses the procedural posture of this matter. As noted above, at the time Ms. Ridgway filed her Motion for Summary Judgment, no Answers to the interpleader Complaint had been filed (including her own), and Plaintiff had not yet moved to interplead the disputed funds to the Court. As a result, Plaintiff responded that summary judgment should be denied as premature, and asked the Court to address its Motion for Interpleader Judgment first. Dkt. #24.

Since then, Answers to the interpleader Complaint have been filed by all Defendants except for Mr. Joseph M. Gonzales, and Plaintiff has moved for Judgment in Interpleader. Dkts. #18, #22, #33 and #35. In addition, the Court acknowledges that the proper determination as to how policy proceeds should be disbursed is through the interpleader action itself. Thus, the Court agrees with Plaintiff that Ms. Ridgway's summary judgment motion was premature at the time it was filed, but finds that it should now be determined after the Court addresses whether interpleader is appropriate. That conclusion comports with the way interpleaders are typically addressed in other Districts. For example, in *State Farm Life Ins. Co. v. Jonas*, the U.S. District Court for the Southern District of Indiana found that summary judgment was inappropriate when the Court had not yet determined whether the prerequisites to statutory interpleader had been met, and whether interpleader was available. 2013 U.S. Dist. LEXIS 86703, *3-4 (S.D. Ind. June 20, 2013).

In addition, the U.S. District Courts for the Eastern District of Louisiana and the Southern District of Mississippi have also found summary judgment to be premature when

filed prior to an interpleader determination.  In *Bunkers Int'l Corp.*, the Louisiana District

Court explained:

> By filing the instant motion for partial summary judgment, BIC has essentially asked the Court to bypass the first stage of the interpleader action and decide the merits of its claim under stage two.  Although admittedly, on its face, this action appears to present a classic textbook example of interpleader, *see Hapag-Lloyd*, 2016 U.S. App. LEXIS 3232, 2016 WL 731776, at *3, a decision has not been rendered on the stage-one issue.  For this reason, BIC's motion for summary judgment is premature at this time.  *See Progressive Am. Ins. Co. v. Thorn*, No. 06-717, 2007 U.S. Dist. LEXIS 33600, 2007 WL 1381576, at *3 (M.D. Ala. May 8, 2007) (denying motion for summary judgment as premature because stage one of the interpleader claim had not yet come before the court by motion or otherwise).

*Bunkers Int'l Corp. v. M/V Wuchow*, 2016 U.S. Dist. LEXIS 37889, *10 (E.D. La. March

23, 2016).  Likewise, the Mississippi District Court noted:

> "There can be no determination of rights between the claimants to the insurance benefits until there has first been a determination that interpleader is appropriate." *Markes v. Metropolitan Life Ins. Co.*, No. 98-cv-0391, 1999 U.S. Dist. LEXIS 1161, 1999 WL 55220, at *2 (N.D.N.Y. Jan. 26, 1999) (denying plaintiff's motion for default judgment on the merits as premature where "stage one of the traditional interpleader claim has yet to come before the Court by motion or otherwise"); *see also Progressive Am. Ins. Co. v. Thorn*, No. 2:06cv717, 2007 U.S. Dist. LEXIS 33600, 2007 WL 1381576, at * 2-3 (M.D. Ala. May 8, 2007).

*Landrum v. Conseco Life Ins. Co.*, 2012 U.S. Dist. LEXIS 81861, *5 (S.D. Miss. June 13,

2012).

This Court finds that reasoning persuasive in this case.  Because Ms. Ridgway's

motion for summary judgment was filed before any Answers to the interpleader Complaint

had been filed, and before the Court has made a determination as to whether interpleader is

appropriate, the Court finds that the merits of the summary judgment motion should be

addressed after the Court's determination of whether interpleading is appropriate.  Because

both motions are now before the Court, both motions will be resolved through this Order. *See N.Y. Life Ins. Co. v. Connecticut Development Authority*, 700 F.2d 91, 95 (2nd Cir. 1983) ("Normally an interpleader action is concluded in two stages, the first determining that the requirements of [federal jurisdiction] are met and relieving the plaintiff stakeholder from liability, and the second adjudicating the adverse claims of the defendant claimants; this bifurcation is not mandatory, however, and the entire action may be disposed of at one time.").

## B. Plaintiff's Motion for Judgment in Interpleader

### 1. Standard of Review

In a typical interpleader action, the "stakeholder" of a sum of money sues all those who might have claim to the money, deposits the money in the Court's registry, and lets the claimants litigate who is entitled to the money. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1265 (9th Cir. 1992). Under Federal Rule of Civil Procedure 22, "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1). The Ninth Circuit has held that "[i]nterpleader is proper when a stakeholder has at least a good faith belief that there are conflicting colorable claims." *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 889 (9th Cir. 2012). A party may initiate an interpleader "even if some or all of the claims against the stake are prospective." 4 Moore's Federal Practice, *Interpleader* § 22.03[1][e] (2012); *see also Michelman*, 685 F.3d at 894 (holding "that in order to avail itself of the interpleader remedy, a stakeholder must have a good faith belief that there *are or may be* colorable competing claims to the stake") (emphasis added). "There are two steps to an interpleader action. The first is determining whether the requirements of interpleader have

been met." *Hartford Life Ins. Co. v. Banks*, 2011 U.S. Dist. LEXIS 91059 at *5 (S.D. Cal. August 15, 2011) (citation omitted). "The second step is to 'adjudicat[e] the adverse claims of the defendant claimants.'" *Id.* (*quoting Western Conf. of Teamsters Pension Plan v. Jennings*, Case No. C-10-03629 EDL, 2011 U.S. Dist. LEXIS 71266 at *5 (N.D. Cal. June 6, 2011) (citation omitted).

Once the action has been initiated, the Court may dismiss the stakeholder from the case and enjoin the claimants from separately suing the stakeholder over the same policy benefits. 28 U.S.C. § 2361. *See, e.g., Mayer v. Mayer*, No. C11-05328-BHS, 2012 U.S. Dist. LEXIS 1177, 2012 WL 29129, at *1 (W.D.Wash.2012), citing to *Minn. Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 981 (9th Cir.1999). "Discharge [of an interpleader] is normally granted absent bad faith by the stakeholder." *Jennings*, 2011 U.S. Dist. LEXIS 71266 at *5 (*citing New York Life Ins.*, 700 F.2d at 96). However, a district court may delay or deny discharge of the stakeholder if there are "serious charges that the stakeholder commenced the action in bad faith." *Mendez v. Teachers Ins. & Annuity Assoc.*, 982 F.2d 783, 788 (2nd Cir. 1992). But, the Ninth Circuit has emphasized that the good faith requirement "is not an onerous requirement." *Michelman*, 685 F.3d at 894. The "threshold to establish good faith is necessarily low so as not to conflict with interpleader's pragmatic purpose, which is 'for the stakeholder to protect itself against the problems posed by multiple claimants to a single fund.'" *Id.* (quoting *Mack v. Kuckenmeister*, 619 F.3d 1010, 1024 (9th Cir. 2010)). A stakeholder "need not sort out the merits of conflicting claims as a prerequisite," but "good faith requires a real and reasonable fear of exposure to double liability or the vexation of conflicting claims." *Id.* (citing *Union Cent. Life Ins. Co. v. Hamilton Steel Products*, 448 F.2d 501, 504 (7th Cir. 1971)). Thus, a stakeholder need

establish only that an adverse claim meet a "minimal threshold level of substantiality." *Id.* at 895.

### 2. *Plaintiff's Motion for Judgment in Interpleader*

On its Motion for Judgment in Interpleader, Plaintiff asks the Court for an Order allowing it to interplead the disputed funds into the Court's registry, discharge it from all liability and enjoin the Defendants from pursuing actions against it related to the disputed funds, and awarding it reasonable costs and attorney's fees. Dkt. #22. For the reasons discussed herein, the Court will grant the motion in part and deny it in part.

Plaintiff filed its interpleader action on October 3, 2017, on the basis of federal question jurisdiction. Dkt. #1 and ¶ ¶ 2.1, fn. 3 and 4.4. Under Rule 22, as long as there is an independent source of federal jurisdiction, *see Gelfgren v. Republic Nat'l Life Ins. Co.*, 680 F.2d 79, 81 (9th Cir. 1982), "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. Pro. 22(a)(1).

In addition, at the time of filing, Plaintiff had a claim from Ms. Ridgway as the beneficiary of the insurance policies, and a letter from the attorney for Ms. Gonzales, Ms. Kristiansen and the Estate, disputing that Ms. Ridgway is a proper beneficiary. Dkts. #1 at ¶ 3.7, #14 at 8, ¶ 23 and Ex. D thereto, #37 at ¶ ¶ 7 and 8 and Ex. A thereto, and #23, Ex. K. Thus, at the time of the filing of the interpleader action, Plaintiff was aware of adverse claims to the fund.

Ms. Ridgway argues that there was no colorable claim at the time Plaintiff decided to file its interpleader Complaint. Dkt. #34 at 10-13. Ms. Ridgway first focuses on the information known to Plaintiff on August 24, 2017. At that time, Ms. Carter stated that if

the disputed claims could not be resolved informally there would need to be an interpleader action. *See* Dkts. #34 at 10-11 and #23-1, Ex. G. Ms. Ridgway asserts that Plaintiff did not have a dispute from anyone as of that date because Plaintiff did not have a copy of the letter written by Ms. Gonzales and Ms. Kristiansen disputing Ms. Ridgway's claim. *Id.* Ms. Ridgway also focuses on the September 7th letter from the attorney for Ms. Gonzales and Ms. Kristiansen, asserting that the letter was baseless, and therefore there was no actual dispute at the time of filing. Dkt. #34 at 11-12. The Court is not persuaded.

Interpleader is proper when a stakeholder has at least a good faith belief that there are present or prospective colorable competing claims to the stake. *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 884, 899 (9th Cir. 2012); *N.Y. Life Ins. Co. v. Powell*, No. 12-cv-5184-RBL, 2012 WL 4868008, at *2 (W.D. Wash. Oct. 12, 2012). It is evident in this record that Plaintiff had or would have colorable competing claims to the insurance proceeds at the time suit was filed. Moreover, a stakeholder "need not sort out the merits of conflicting claims as a prerequisite," but "good faith requires a real and reasonable fear of exposure to double liability or the vexation of conflicting claims." *Id.* (citing *Union Cent. Life Ins. Co. v. Hamilton Steel Products*, 448 F.2d 501, 504 (7th Cir. 1971)). Thus, a stakeholder need establish only that an adverse claim meet a "minimal threshold level of substantiality." *Id.* at 895.

With respect to Ms. Ridgway's argument that Plaintiff caused the competing claims to arise, and therefore it should not be allowed the protection of interpleader, the Court is also not persuaded. In a similar situation, the United States District Court for the District of Arizona explained:

Citing *Lee v. West Coast Life Ins. Co.*, 688 F.3d 1004, 1012 (9th Cir. 2012), Mr. Broatch contends that interpleader protection is not appropriate because AUL acted in bad faith and created the controversy before the Court. Mr. Broatch argues that AUL moved for interpleader in bad faith because it acted in bad faith in processing his claim. However, the type of bad faith that constitutes a breach of the duty of good faith and fair dealing is different from the type of bad faith that prevents a stakeholder from claiming the interpleader protection. For example, in *Kent v. Northern California Regional Office of the American Friends Service Committee*, 497 F.2d 1325, 1328 (9th Cir. 1974), the court denied interpleader protection because the "the trustees knew of the competing claims before the trust was ever established" and "voluntarily placed themselves in the position of being subject to adverse claims by multiple claimants." Mr. Broatch has not presented any evidence showing that AUL acted in bad faith by voluntarily subjecting itself to adverse claims.

Mr. Broatch also suggests that AUL initiated the competing claims by contacting Ms. Garland before making a decision on his claim. But AUL could have moved for interpleader and been entitled to protection even before receiving a claim from Ms. Garland. Competing claims need not actually exist for a stakeholder to move for interpleader; the stakeholder only needs to have a good-faith belief that there "may be colorable competing claims" to the stake. *See Michelman*, 685 F.3d at 899. Furthermore, a stakeholder does not "create" the controversy by recognizing that an insurance beneficiary's claim might fail, but by committing a tort or breaching a contract and causing damages to be owed. *See Farmers Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229, 232 (10th Cir. 1988); *Union Gas Corp. v. Gisler*, 129 S.W.3d 145, 153 (Ct. App. Tex. 2003). The benefit is at issue in this case because of the death of the insured – AUL committed no wrongdoing creating the controversy. Mr. Broatch has not presented any evidence demonstrating the type of bad faith discussed in *Lee*.

*Am. United Life Ins. Co. v. Broatch*, 2014 U.S. Dist. LEXIS 188005, *16-19 (D. Ariz. Aug. 29, 2014). The same reasoning holds true in this case. Thus, the Court finds that Plaintiff has met the requirements for interpleader and will allow it to deposit the subject funds into the Court registry.

However, the Court will not yet discharge Plaintiff from this action. Ms. Ridgway has filed a Counterclaim against Plaintiff alleging violations of 29 U.S.C. § 1132 stemming

ORDER– 12

from the way Plaintiff handled her claim.  Dkt. #33 at VI. A. and B.  Numerous questions of material fact demonstrate a genuine dispute as to the handling of Ms. Ridgway's claim.  *See* Dkts. #34 at 16-18.  Indeed, as noted above, Ms. Beck's Declaration filed in this action contradicts other evidence submitted by Plaintiff in this matter.  *See* Dkts. #37 at ¶7 and #23-1, Ex. G.  Plaintiff asserts that the counterclaim must be dismissed and the Court should discharge it from any liability with respect to the disputed funds.  Dkt. #36 at 8-11.  However, Plaintiff misconstrues the claim against it.  Ms. Ridgway does not allege simply that Plaintiff acted in bad faith by filing an interpleader action, but rather that Plaintiff violated 29 U.S.C. § 1132 by improperly handling Ms. Ridgway's claim and improperly withholding funds that it had already authorized for payment.  This claim arises independently of the filing of interpleader.  As this Court has found in similar contexts, Ms. Ridgway's bad faith claim is "based primarily on Lincoln's failure to comply with the governing claims handling statutes and regulations."  *Michelman v. Lincoln Nat'l Life Ins. Co.*, 2010 U.S. Dist. LEXIS 80630, *11 (W.D. Wash. Aug. 10, 2010).  Thus, this claim will be allowed to proceed.  Whether Ms. Ridgway can succeed on the claim is a question left for another day.

Accordingly, the Court now turns to Ms. Ridgway's motion for summary judgment.

**C.  Ms. Ridgway's Motion for Summary Judgment**

*1.  Legal Standard on Summary Judgment*

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter,

but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

2. *Payment of Life Insurance Proceeds*

On her motion for summary judgment, Ms. Ridgway moves for an Order dismissing Defendants Joseph M. Gonzales, Amanda Gonzales, Bethany Kristiansen and the Estate of Joseph Gonzales, as a matter of law, and then asks the Court to issue an Order requiring immediate payment of the subject life insurance proceeds to Ms. Ridgway. Dkt. #14. Ms. Ridgway argues that she is the properly-named, sole beneficiary, there is no evidence of undue influence in making her the beneficiary, and but for Plaintiff's invitation of a claim contest from Ms. Gonzales and Ms. Kristiansen her claim would have already been paid. Dkt. #14 at 12-23. Co-Defendants Ms. Gonzales and Ms. Kristiansen oppose the motion, arguing that this motion is premature, that questions of material fact preclude summary

judgment in any event, and that Ms. Ridgway's motion relies on inadmissible evidence. Dkt. #26. The Court disagrees with Co-Defendants.

As an initial matter, the Court notes that Co-Defendants' opposition was untimely filed. Pursuant to the Court's Local Rules, responses to dispositive motions are due no later than the Monday prior to the noting date. LCR 7(d)(3). Ms. Ridgway's motion for summary judgment was noted for consideration on Friday, December 29, 2017. Dkt. #14. Thus, any opposition was due no later than Monday, December 25, 2017. However, because December 25, 2017, was a Court holiday, the opposition was due on the following day that was not a Saturday, Sunday or legal holiday. LCR 7(d)(5). Accordingly, the opposition was due no later than Tuesday, December 26, 2017. Ms. Gonzales and Ms. Kristiansen, however, did not file their opposition until December 27, 2017. Dkt. #26. Therefore, the Court could strike the opposition in its entirety. However, the Court will consider the opposition in this situation, as the Court ultimately finds it to be deficient in other respects.

Ms. Ridgway asserts that she is entitled to the proceeds of Mr. Gonzales's insurance policies because she is the sole and valid beneficiary. Indeed, there is no dispute that she was the sole beneficiary named on the policies, and that her beneficiary designation was effective at the time of Mr. Gonzales's death. Dkts. #14-1 at ¶ 6 and Ex. A thereto, #1 at ¶3.3 and #22 at 2, fn. 4. However, Ms. Gonzales and Ms. Kristiansen assert that their father's Estate is the proper recipient to the proceeds because Ms. Ridgway was only named as the beneficiary because of her undue influence on Mr. Gonzales. Dkt. #26.

Because this interpleader Complaint came to this Court on federal question jurisdiction, federal law governs the question of undue influence. Generally, federal courts

presume mental competency in the insurance context.  *See, e.g.*, *Rice v. Office of Servicemmbers' Group Life Ins.*, 260 F.3d 1240, 1248 (10th Cir. 2001);  *Howells State Bank v. Novotny*, 69 F.2d 32, 34 (8th Cir. 1934) (noting "a presumption of mental capacity" to assign one's life insurance policy); *Metro. Life Ins. Co. v. Anderson*, 101 F. Supp. 808, 811 (E.D. La. 1951) (noting the "legal presumption of mental capacity" to change one's insurance beneficiary); *cf.* 3 *Couch on Insurance* § 40:2 (3d ed. 2000) ("The fact that a policy was issued raises the presumption that the insured was of sound mind at the time the contract was entered into, and clear proof is required to establish that he or she lacked sufficient capacity." (footnotes omitted)).  It is up to the Co-Defendants to rebut that presumption to overcome summary judgment.  In this case, they cannot.

Ms. Ridgway has presented evidence that Mr. Gonzales was of sound mind when he made her the beneficiary of his insurance policies.  He made the designation on the same day as he designated her as the beneficiary of his 401(k).  The beneficiary designation was not challenged and the proceeds have since been distributed.  Dkt. #14-1 at ¶ 13 and Ex. B thereto.  In addition, Ms. Ridgway has testified that she had no knowledge that she was to be named as the sole beneficiary prior to receiving an email from Mr. Gonzales notifying her as much.  Dkt. #14-1 at ¶ ¶ 6-7 and Ex. A thereto.  No one at Lincoln National had questioned the beneficiary designation at the time Ms. Ridgway made her claim and it was prepared to send her a check for the proceeds.  *See* Dkt. #23-1, Ex. G.  In addition, Ms. Ridgway has presented additional Declarations from non-familial individuals attesting to their relationships with the couple during the time period in question.  Dkts. #29, #30 and #31.  There is nothing in the record indicating or even giving rise to an inference of undue influence in designating Ms. Ridgway as the beneficiary.

Moreover, Ms. Gonzales and Ms. Kristiansen fail to meet their burden of rebuttal.

Under Federal Rule of Civil Procedure 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> . . .
>
> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly support or address the fact;
> >
> > (2) consider the fact undisputed for purposes of the motion;
> >
> > (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
> >
> > (4) issue any other appropriate order.

Fed. R. Civ. Pro. 56(c)(1) and (e). In opposition to summary judgment, Ms. Gonzales and Ms. Kristiansen fail to present any support for their allegations that Mr. Gonzales named Ms. Ridgway as a beneficiary because of her undue influence. *See* Dkt. #26. Indeed, without citing to a single piece of evidence, and relying only on their bare allegations, Ms. Gonzales and Ms. Kristiansen attempt to raise questions as to their father's state of mind at

ORDER– 17

the time he named Ms. Ridgway his sole beneficiary.[5]  Dkt. #26 at 4.  This does not satisfy

the standards set forth in Rule 56.[6]

Likewise, to the extent that Ms. Gonzales and Ms. Kristiansen suggest that

additional discovery is required, *see* dkt. #26 at 2-4, they have also failed to meet the Rule

56 standard.  "If a nonmovant shows by affidavit or declaration that, for specified reasons,

it cannot present facts essential to justify its opposition, the court may: (1) defer

considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to

take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. Pro. 56(d).  Here,

Ms. Gonzales and Ms. Kristiansen have not actually asserted that it cannot present facts

essential to justify their position, nor have they submitted any affidavit or declaration

specifying why they cannot present such evidence and what they would expect to find in

discovery.

Finally, Ms. Gonzales and Ms. Kristiansen assert that Ms. Ridgway's motion for

summary judgment relies on inadmissible evidence.  Dkt. #26 at 5.  The Court disagrees.

---

[5]  Ms. Gonzales and Ms. Kristiansen erroneously assert that their allegations must be taken as true simply because an Answer to their Crossclaim had not been filed at the time Ms. Ridgway moved for summary judgment.  That argument is mistaken.  Ms. Ridgway did not move for dismissal under 12(b)(6).  Rather, she moved for summary judgment under Rule 56, relying on evidence outside of the pleadings, and Ms. Gonzales and Ms. Kristiansen were required to respond in accordance with the proper standards.

[6]  Ms. Ridgway and Ms. Kristiansen rely on Washington law rather than federal law in making their arguments on undue influence.  Dkt. #26.  Even if this Court applied Washington law, they would fail to meet their burden.  Indeed, Washington courts require a showing that the amount in controversy is a disproportionately large portion of the estate, as well as a showing that the claimant participated in the transaction.  *See*, *e.g.*, *Kitsap Bank v. Denley*, 177 Wn. App. 559, 578-79, 312 P.3d 711, 720-21 (Div. II 2013) (affirming summary judgment on undue influence claim where challengers failed to present evidence of the entire value of the estate, no rational trier of fact could find clear, cogent, and convincing evidence

Ms. Ridgway has testified to her own knowledge and can authenticate email communication that she received and sent, as noted above. *See* Dkt. #27 at 8. Similarly, Ms. Ridgway's counsel's Declaration is proper, and he has properly introduced the exhibits attached thereto for the reasons discussed in Ms. Ridgway's Reply.[7] Dkt. #27 at 8-10.

For all of these reasons, the Court grants Ms. Ridgway's motion for summary judgment. However, given the outstanding bad faith Counterclaim and issues surrounding the parties' requests for attorney's fees and costs, as further discussed below, the Court will direct the subject funds to be deposited into the Court's registry pending a final judgment in this case.

### 3. Ms. Ridgway's Motion for Extension of Time and Default

Finally, the Court addresses Ms. Ridgway's Motion to Extend Time for Filing Answer and For Order of Default against Joseph M. Gonzales. Dkt. #20. Given that Ms. Ridgway has already filed her Answer and that the Court has now found summary judgment in her favor, that portion of the motion seeking an extension of time is now MOOT.

With respect to the portion of the motion seeking default against Joseph M. Gonzales, the Court grants that request. Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." In this case, it appears that Joseph M. Gonzales was properly served

---

establishing that the beneficiary had participated in the transaction, and because the evidence presented was contrary to the presumption of undue influence.

ORDER– 19

with the interpleader Complaint. Dkt. #15. Likewise, it appears that Joseph M. Gonzales was served with a copy of the summary judgment motion and accompanying declarations and exhibits. Dkt. #28 at ¶¶ 2 and 3 and Exs. A and B thereto. Joseph M. Gonzales has failed to appear or otherwise defend this action in any manner. Accordingly, the Court agrees that an entry of default is appropriate.

    *4. Requests for Attorney's Fees and Costs*

Plaintiff has sought its attorney's fees and costs against Ms. Ridgway for bringing this interpleader matter, simply because she would not stipulate to an interpleader judgment in favor of Plaintiff. Dkt. #22 at 10. Ms. Ridgway has also sought an award of attorney's fees and costs under ERISA. Dkt. #34 at 20-23. Because Plaintiff will not be discharged from this matter due to the pending bad faith Counterclaim, and because the bad faith Counterclaim remains to be resolved, the Court will deny these requests as premature. Nothing in this Order prevents either Plaintiff or Ms. Ridgway from renewing the request once the Counterclaim has been resolved.

## IV. CONCLUSION

Having reviewed the parties' motions, the Oppositions thereto and Replies in support thereof, along with the supporting Declarations and Exhibits and the remainder of the record, the Court hereby finds and ORDERS:

    1. Plaintiff's Motion for Judgment In Interpleader (Dkt. #22) is GRANTED IN PART AND DENIED IN PART as discussed above. Plaintiff shall deposit the subject funds into the registry of the Court. The Clerk shall retain such funds until

---

[7] Given the Court's finding below as to Joseph M. Gonzales's default, and the fact that he has failed to respond at all to the motions in this case, the Court finds that a judgment of

directed to release them in full or in part by further Order. Plaintiff shall remain in this action pending a resolution of Ms. Ridgway's Counterclaim.

2. Defendant Claudia Ridgway's Motion to Extend Time For Filing Answer and for Default Against Joseph M. Gonzales (Dkt. #20) is GRANTED IN PART AND DENIED IN PART AS MOOT

3. Defendant Claudia Ridgway's Motion for Summary Judgment Dismissal Against Defendants Joseph M. Gonzales, Amanda Gonzales, Bethany Kristiansen and Estate of Joseph Gonzales and Requiring Payment of Life Insurance Proceeds (Dkt. #14) is GRANTED. All claims and cross-claims made by Defendants Joseph M. Gonzales, Amanda Gonzales, Bethany Kristiansen and Estate of Joseph Gonzales are hereby DISMISSED with prejudice, and those Co-Defendants are now DISMISSED from this case. Ms. Ridgway is entitled to the proceeds of the subject insurance policies. Those proceeds shall be held in the Court registry pending resolution of Ms. Ridgway's Counterclaim, and the parties' requests for attorney's fees and costs.

4. This case remains OPEN pending resolution of Ms. Ridgway's Counterclaim. No other claims remain.

DATED this 14th day of February 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

dismissal is appropriate as to him.

ORDER– 21